## WILLIAM O'CONNOR *vs.* BOSTON AND LOWELL RAILROAD CORPORATION.

Essex. Nov. 10, 1882. — Sept. 10, 1883.   C. ALLEN, COLBURN & HOLMES, JJ., absent.

A railroad corporation constructed its tracks across a private way, which connected two public ways of a city, and over which there was much travel. At the crossing the corporation put up a sign, upon which was the following : "This is not a public way, and is dangerous." *Held,* in an action against the corporation, by a person injured at the crossing by being struck by a locomotive engine of the defendant, that the corporation was not entitled to a ruling, as matter of law, that this sign was a denial of the right of crossing, and that a person crossing did so at his own risk.

If, in an action against a railroad corporation for an injury sustained by being run over by a locomotive engine of the defendant, at a crossing of a private way at grade, the plaintiff relies upon the alleged negligence of the engineer of the locomotive, and also upon the want of a flagman, the defendant is not entitled to a ruling that, if the engineer used reasonable care, the plaintiff is not entitled to recover.

In an action against a railroad corporation, for an injury sustained at a crossing at grade, the defendant is not entitled to a ruling that the amount of care required of the railroad in using the crossing is the same that is required of the person who attempts to use the crossing, to avoid danger.

A boy about nine years old had in his charge, in a street of a city in the daytime, his brother, who was nearly five years of age. On approaching a place where the way crossed a railroad at grade, the younger boy, who was a short distance in advance, turned to see if his brother was coming, and, while walking backwards over the railroad, caught his foot between one of the rails and the planking which was laid between the rails, and, before he could extricate his foot, he was run over by a locomotive engine. At the time the boys began to cross the railroad, there were no indications of the approach of the engine. *Held,* in an action for the injuries sustained, against the corporation owning the railroad, that the question whether the boys and their parents were in the exercise of due care was one of fact for the jury.

TORT for personal injuries. Trial in the Superior Court, before *Pitman,* J., who allowed a bill of exceptions, in substance as follows:

About three hundred feet south of the Merrimac River, in the city of Lawrence, is the south canal of the Essex Company, about sixty feet wide, and immediately south of this canal is a private way about seventy feet wide, belonging to the same company, and known by the name of Merrimac Street. This way is considerably used by the public for travel, and connects two streets of the city. A branch of the defendant's railroad crosses the Merrimac River, and then on a curved line crosses the canal by an iron trestle bridge, and passes over this way at a level therewith. The defendant's location over the way was purchased by it of the Essex Company; and, by a contract with the Essex Company, the defendant agreed to keep the same in good condition, and that the Essex Company and its grantees, owners of mill sites on the canals, should have the right to cross the location. At the time of the construction of the railroad, in 1879, the defendant placed planks between its tracks on this way.

The plaintiff's brother, called as a witness by the plaintiff, testified that on August 27, 1880, when he, the witness, was nearly nine years of age, and the plaintiff was four years and eleven months old, he and his brother were returning from North Lawrence, on foot, unaccompanied by any person; that they crossed the river, passed round the end of the canal, and started to cross the railroad track on Merrimac Street; that, as they were crossing the track, the plaintiff, who was walking ahead, turned round to see if the witness was coming, and, while walking backwards, stepped into the space between one of the

rails of the defendant's railroad and the planking, left for the flange of the wheel of the locomotive engine; that the plaintiff was unable to withdraw his foot, and the witness attempted to pull it out, but was unable to do so; that he heard the whistle of an approaching train of cars coming from the northward, and, finding that he was unable to extricate his brother, he ran upon the canal bridge and endeavored to signal the train by outcries, and by waving his arms; that the engineer saw him and paid no attention to him; that he then returned to his brother, took hold of him, bent him over and held him down, so that he might lose his foot instead of his life; and that, while he so held him down, the train, which consisted of a locomotive engine and two cars, passed along and severed both of the plaintiff's feet. The length of the train was one hundred and sixty-two feet; and the train was stopped just as the rear car passed the plaintiff.

One Bailey testified, for the plaintiff, that, just before the accident, he was on the street south of the canal, (which he had known as Merrimac Street for twenty-five years,) about four hundred feet from the railroad crossing and going towards it, when his attention was attracted by hearing a boy scream; that he saw the older boy, who was screaming, run to his brother, whose foot was fast in the track, and try to get it out; that the older boy then ran on to the canal bridge, a few feet on, and waved a pail, which he had in his hand, and hollaed; that he then ran back to his brother and bent him over, and the train came along and cut off both his feet. On cross-examination, the witness testified that he heard the whistle of the locomotive engine before he saw the boys; and that, when the train came in sight, the steam brakes were being applied.

The engineer testified, for the defendant, that, having blown the whistle and rung the bell, he was looking upon the track, and first came in sight of the boys as he approached the canal bridge; that he immediately gave several short whistles as a signal of danger; and, the children not leaving the track, he immediately applied the steam brakes, which were in perfect order, and reversed his engine, bringing the train to a stand-still as quick as he could; that the speed of the train, as he approached the bridge over the canal and saw the children, was about seven or eight miles an hour; that the older boy did not

leave the younger one at all, and did not run towards the train, nor make any outcry or signal to him.

The planking at the crossing had remained in the same condition it was in when laid, down to the time of the accident. The defendant's witnesses testified that the planking was properly constructed and in good order; no witness testified that the planking was improperly constructed or out of order; but the plaintiff contended that the jury might, from the view which they took and the circumstances of the case, find that it was not properly constructed.

It was not contended that the train was, in any respect, out of order, or improperly manned, or that the proper signals were not given; but the plaintiff contended that the cross-examination of the engineer, a witness for the defendant, showed that he was not possessed of sufficient intelligence or capacity for the duties entrusted to him.

The defendant contended, on the evidence, that an intervening building prevented the place of the accident from being seen from the bridge crossing the Merrimac River at a point more than thirty feet from the southerly end thereof, a distance of about four hundred and seventy-five feet from the place of the accident; and that the trestles of the bridge across the canal also prevented the place of the accident being seen from the locomotive engine, until it had reached a point within a short distance of the canal bridge. The plaintiff denied this, and contended that the place of the accident could be seen at a much greater distance.

Upon the end of the canal bridge nearest the place of the accident, and in full view therefrom, was placed, at the time of the opening of the railroad, a sign adjoining and fronting said crossing, about four feet long and a foot wide, bearing this inscription: "This is not a public way, and is dangerous." The plaintiff contended that this notice referred to the bridge over the canal, on which were two railroad tracks, but neither sidewalk nor' planking, and that it was intended to warn persons from crossing the bridge; and the defendants contended that the sign referred to the way; and this question was argued to the jury. The brother of the plaintiff testified that he saw and read this sign.

It was agreed that there was no gate or flagman at this crossing.

At the close of the evidence, the defendant requested the judge to order a verdict for the defendant. The judge declined so to do.

The defendant asked the judge to instruct the jury as follows: " 1. If the plaintiff's walking backwards over the tracks at the place of the accident in any degree contributed to the accident, he was guilty of negligence, and cannot recover. 2. If the plaintiff in any respect was not in the exercise of reasonable care, and such want of reasonable care in any degree contributed to the accident, the plaintiff cannot recover. 3. If permitting the plaintiff to go over the tracks by his parents was, under the circumstances, a want of reasonable care, and such want contributed to the accident, the plaintiff cannot recover. 4. If this crossing was built under the contract with the Essex Company, for their use, the railroad had the right, as against all others, to deny the right of crossing, and the conspicuous posting of a sign that 'this is not a public way, and is dangerous,' was such denial, and any persons using it after such notice did so at their own risk. 5. The only duty devolving upon the railroad or its servants, under any circumstances, as against the plaintiff, was to exercise reasonable care, and this reasonable care applies to the construction and maintenance of the crossing, (if the judge shall rule, or the jury shall find, that, as against the plaintiff, it was bound to maintain the crossing at all,) to the train and its appointments, to the train men and other servants employed, and to the conduct of such train men and servants; and if no want of such reasonable care on the part of the railroad caused the accident, the plaintiff cannot recover. 6. If the engineer was in the exercise of reasonable care in running the train, and, when he discovered the boys upon the track, he used reasonable endeavors to avoid the accident, and the failure to stop the train caused the accident, the plaintiff cannot recover. 7. If both the plaintiff and the defendant were in the exercise of reasonable care, the plaintiff cannot recover, or if both parties were wanting in reasonable care, the plaintiff cannot recover. 8. The amount of care required of the railroad in using the crossing, to avoid danger, is the same that is required

of the person who attempts to use the crossing, to avoid danger. If extreme danger makes extreme care reasonable to the one party, it makes it equally so to the other."

The judge gave the second, third, fifth and seventh requests for instructions.

The judge declined to give the first request for instructions; and, on this point, instructed the jury as follows: "In the first place, you will consider whether the plaintiff was rightfully there. If he was too young to be there at all, he could not have been guilty of negligence. If he had no capacity to exercise care, if he was not of an age to be properly there, he cannot be said in law to be guilty of negligence. If he was properly there, and if his walking backwards was carelessness, taking into account his age, and that contributed to the accident, that would be within the general principle that the plaintiff's negligence would bar him of the right of action. But if he was of an age when he was not capable of exercising care, was not in law supposed to be properly there excepting under the guardianship of somebody, then the question would be whether negligence on the part of the person who had him in charge contributed to the accident. Then the question would be whether this person knew what the plaintiff was doing, saw it, and had an opportunity of interfering with it; and also whether he was guilty of negligence in allowing the plaintiff to be without his immediate control, either by having him by the hand, or otherwise exercising efficient control over him."

In a subsequent part of his charge, the judge further instructed the jury upon this point as follows: "What is reasonable care depends, not only upon the circumstances to which I have alluded in regard to the boy and his age, but upon a variety of other circumstances; and one is the apparent danger, and the nature and power of the instrumentality used. Of course a person in walking must exercise a different degree of care when he is approaching danger from that which he exercises when he is walking in perfect safety; and the presence of danger imposes a different rule of care. How much that rule is modified by the youthfulness of a person, and the lack of that mature judgment which adult persons would have, is for you to say, under the rules I have given you. In estimating the degree

of care which should be imposed, you will take into account the fact that there are young people who can be careless, as in cases, which perhaps have come within your own observation, of young children endeavoring to skip across a railroad track when an engine is coming, to see which shall be the last one to cross. Every one would understand that to be sheer carelessness. You will not destroy the rule which requires reasonable care on the part of every one; but, in considering the conduct of individuals, you may give proper consideration to the fact that persons are immature, or not of full age."

The judge declined to give the fourth request for instructions; and instructed the jury that, if the crossing was built under the contract with the Essex Company, the defendant had the right to deny crossing to all others not mentioned therein; that whether the sign was such denial depended upon a question of fact, as to what the sign applied to; that this was for the jury to determine; that, if it applied to the way, while it was a notice to the plaintiff that this was not a public way, and was in some sense dangerous, it was not, as matter of law, a denial of his right to pass; that, because a place is marked, "This is not a public way," it did not necessarily follow that everybody is prohibited from passing over it; that it was a question of fact how far the sign was to be taken as a notice that persons had not a right to pass; that, as the crossing was the private property of the defendant, the burden of proof was on the plaintiff to show, taking all the facts into consideration, the sign among them, that there was an implied license for all persons to pass over; that, if the plaintiff was a trespasser, the defendant would not be liable, except in case of wantonness or gross negligence on its part, of which there was no evidence. In regard to the implied license to the plaintiff to cross the tracks at this place, and the duty of the defendant to protect him in so passing, the judge read to the jury, as a part of his ruling, the language of the court in *Sweeny* v. *Old Colony & Newport Railroad*, 10 Allen, 368, 372.

The judge declined to give the sixth request for instructions; but instructed the jury, that, so far as the duty of the engineer was concerned, he would be bound to nothing but the exercise of reasonable care, and the defendant would not be responsible for anything else; that the right of the plaintiff to

recover was not limited to the conduct of the engineer, because he based his right of action upon more than this ground; that, undoubtedly, the general rule was reasonable care under the circumstances.

The judge gave the seventh request for instructions to the jury, and further instructed them as follows: "Upon this question of reasonable care, something more ought to be said. The law uses the phrase 'reasonable care,' but it is an elastic phrase, not always meaning in its practical application the same thing. In one sense, it is always 'reasonable care,' but, as applied to the conduct of persons, it means one thing at one time, and another thing at another time. In the matter which I am now upon, the law does not exact from children the same degree of watchfulness, judgment, foresight and coolness that it exacts from adults. It says that, if you find that either the child himself, or the child who has charge of him, is of suitable age to be where he is, if he has a right to be there at all, then he is only to be expected to exercise such care as could reasonably be expected of such children; of course you have first to settle the question whether either the plaintiff or the other boy was to be trusted there. In considering that, not only the age, but all you see of the boy's intelligence or otherwise, judge of him as you see him, and if you are of the opinion that he was a proper custodian of this boy, then the law expects such degree of care of him as would be reasonable for a boy of his age, situated as he was; and that test you will apply. That, again, is a practical question, to which you will apply your observation, experience and judgment in settling the matter."

The judge declined to give the eighth request for instructions; but instructed the jury that each party was bound to use reasonable care; and that it was for the jury to determine what was the care which was reasonable for either party, under all the circumstances of the case. The judge also further instructed the jury, on the question of reasonable care, as follows: "In guarding against accidents, it is only such accidents as can be reasonably foreseen and reasonably anticipated that ought to be reasonably guarded against, and that the railroad should provide against; and you will consider that, of course, in considering the question of care and caution. Several things are

suggested that the railroad was negligent in, in this particular case, and, if you reach this part of the case, you ought to be able to find something, upon which you can put your finger, which you think was neglected. One suggestion is, that they ought to have a flagman at this place. The statutes provide, and it is of some importance in connection with this proposition, that the mayor and aldermen of a city or the selectmen of a town wherein a highway, town way, or travelled place is crossed by a railroad at the same level, — if of the opinion that it is necessary for the better security of the public that gates should be erected across such highway, town way, or travelled place, and that an agent be stationed to open and close such gates when an engine or train passes, or that bars be erected instead of gates, or that a flagman be stationed at the crossing who shall display a flag whenever an engine or a train passes, — may in writing request the corporation to erect and maintain gates, and station an agent thereat, or to erect bars, or to station a flagman at the crossing, and if it refuses or neglects so to do, may apply to the county commissioners. There are other provisions here that the county commissioners may make other orders, if they see fit. The counsel for the plaintiff contends, (and it is correct as a proposition of law,) that it is not conclusive, as matter of law, upon the obligation of the defendant to maintain a flag, that it has not been so directed. The fact that the public authorities have not called upon the defendant to do that is, however, a competent piece of evidence for you to consider. If, notwithstanding that, it was obvious to reasonable men that it ought to have been done, you may find that the railroad was negligent in not doing it. But you have a right to consider, upon that matter, that the persons who are charged with the duty by the statutes did not call upon the defendants, so far as we have learned in this case, and presumably not at all, to make any such provision. It has not been required to place any of these safeguards about the crossing."

The jury returned a verdict for the plaintiff, in the sum of $10,000; and the defendant alleged exceptions.

*J. H. George* (of New Hampshire) *& C. P. Thompson*, for the defendant.

*S. B. Ives, Jr.*, for the plaintiff.

W. ALLEN, J.   1. The court properly declined to rule that the existence of the sign was conclusive that the plaintiff had no license to use the way and crossing; and the instructions to the jury upon this subject were correct.

2. The sixth prayer for instructions, if it referred only to the conduct of the engineer, was given. ' So far as it was intended to ask for a ruling that there was no evidence of negligence except that of the engineer, it was properly refused.

3. We see no error in the instructions of the court as to what would constitute reasonable care in the one party or the other. The court properly refused to give the eighth prayer in the language in which it was expressed.

4. The principal question presented arises upon the rulings and instructions of the court in regard to the contributory negligence of the plaintiff.

The plaintiff was a boy less than five years of age, and was accompanied by his brother, who was nearly nine years of age. The place where the injury occurred was not a public highway, but was a way open for the public to use, and the jury must have found that the plaintiff was lawfully there.   The question whether there was negligence in the parents of the plaintiff in allowing him to be there, attended as he was, was properly left to the jury.   *Mulligan* v. *Curtis*, 100 Mass. 512.   *Ihl* v. *Forty-Second Street Railroad*, 47 N. Y. 317.

The further question was submitted to the jury, whether the plaintiff and his brother, as the person in whose immediate care he was, were in the exercise of due care in the manner in which he went upon the railroad crossing.   The care required was that which would ordinarily be exercised under like circumstances,  · by boys of four and nine years of age.   It is not a case in which the facts do not appear, and it cannot be known whether there was care or negligence, and therefore there is a failure to prove care, or the absence of negligence, as in *Crafts* v. *Boston*, 109 Mass. 519, and *Hinckley* v. *Cape Cod Railroad*, 120 Mass. 257. The circumstances were in evidence, and the definite question was presented whether the evidence preponderated in favor of care or negligence.   We think this question was properly submitted to the jury.   Neither of the boys knew of the approaching train, and the negligence was not in respect of danger of collision with

**362**                    **SEPTEMBER, 1883.**

passing cars, or of direct personal injury from the condition of the crossing, but of stepping into an opening in the way, and thereby being caught and held, so as to be unable to escape from a train which should afterwards pass. How obvious the danger was depended, to some extent, upon the condition of the crossing; and of that the jury had evidence, from their view of the premises, which the court could not have. Then the standard of care to be applied was not that by which conduct is ordinarily measured. It was not the care of a prudent man, but of a prudent boy, that was to be shown. There was no specific fact, such as violation of a law, or disregard of an established regulation, as in *Wills* v. *Lynn & Boston Railroad*, 129 Mass. 351, which could give character to the act. It was a question whether there was negligence, under all the circumstances, in not observing and guarding against this particular danger, which was not the peculiar danger to which the attention is naturally directed at railroad crossings. Neither the fact that a hole in a road is known to a traveller of years of discretion, nor that it is plainly visible and would have been seen by him had not his attention been directed elsewhere, is conclusive of negligence in him. *Reed* v. *Northfield*, 13 Pick. 94. In *George* v. *Haverhill*, 110 Mass. 506, 513, Mr. Justice Colt said: "It is all to be considered by the jury, but it is not required, as matter of law, that the thoughts of the traveller shall be at all times fixed upon those defects in the road he travels, of which he may have knowledge."

Whether the plaintiff, in walking backwards that he might see his elder brother, in whose company he was, or the brother, in not observing the hole in the way and preventing the plaintiff from stepping into it, was exercising the care ordinarily shown by children of their ages, was peculiarly a question to be determined by the judgment of the jury upon the facts proved by the evidence. *Gaynor* v. *Old Colony & Newport Railway*, 100 Mass. 208. *Smith* v. *Westfield National Bank*, 99 Mass. 605. *Mayo* v. *Boston & Maine Railroad*, 104 Mass. 137. *Lane* v. *Atlantic Works*, 111 Mass. 136. *Treat* v. *Boston & Lowell Railroad*, 131 Mass. 371. *Fleck* v. *Union Railway*, 134 Mass. 480. *Railroad* v. *Stout*, 17 Wall. 657, 663. *Exceptions overruled.*