tween it and the claimants. It was the ordinary relation of debtor and creditor. It is true that it is stated in the agreement that the company was to pay out of the moneys received for the flags; but that could not apply to the whole contract, because, if the company chose to take the flags upon its own account, there would be no money received from which payment could be made; and, under those circumstances, the contract expressly provided that the company should be liable for the price at which the flags were consigned. No limitation was placed upon the right of the company to sell the flags at any price it might see fit; and, if it sold below the consigned price, it is clear that it became a debtor for the consigned price, and nothing else. Upon the whole case, therefore, it seems to us that there was a total failure to show any trust funds in the hands of the receiver upon which these claimants had a lien superior to the other creditors of the company.

The order should be reversed, with $10 costs and disbursements, and the motion denied, with $10 costs. All concur.

---

(19 App. Div. 309.)

### BERZEVIZY v. DELAWARE, L. & W. R. CO.

(Supreme Court, Appellate Division, First Department.   June 25, 1897.)

1. ACCIDENT AT CROSSING—CONTRIBUTORY NEGLIGENCE.

   About 8 o'clock in the evening, when it was not daylight, and a little misty, a witness between 20 and 30 yards behind plaintiff's intestate saw her look up and down the track, and then, when she attempted to cross, saw her struck by a locomotive and killed. A bridge abutment would prevent the engineer from seeing her while approaching the track by a private path. No signal was given before the accident. The track was straight, and there was nothing to obstruct deceased's view of the train, going at the rate of 17 or 18 miles per hour, with headlight burning brightly. *Held*, that the injury was caused by the contributory negligence of plaintiff's intestate.

2. CREDIBILITY OF WITNESSES.

   It is error to charge "that the jury have the right, and may take the liberty, of disregarding the witnesses of the defendant, if they consider them interested, even though they be not contradicted or impeached."

Appeal from trial term, New York county.

Action by Albert Berzevizy, as administrator, etc., of Mary Berzevizy, deceased, against the Delaware, Lackawanna & Western Railroad Company, for damages. From judgment for plaintiff, defendant appeals. Reversed.

Argued before RUMSEY, WILLIAMS, PATTERSON, INGRAHAM, and PARKER, JJ.

Hammond Odell, for appellant.
George P. Nock, for respondent.

INGRAHAM, J.   We do not think that there is any evidence to justify a finding of the jury that the plaintiff's intestate was free from contributory negligence. The plaintiff's intestate, a woman 42 or 43 years of age, in good health, was killed by a train of the defendant's road as she was attempting to cross the track upon the

evening of the 12th day of May, 1893. She was a resident of New York, on a visit to a friend at Newark, N. J., and left the house of this friend about 7 o'clock in the evening, to return to New York. The track of the defendant's road, running from East Orange to Newark, N. J., is a straight road with no curves. There is a path which crosses this road about 3 feet or 3½ feet wide, which is used by persons going from East Orange to Newark as a short cut to avoid going through the street. There was evidence tending to show that the plaintiff's intestate, while walking along this path towards the approaching train, stepped upon the track, when the train, running at a rate of speed of 17 or 18 miles an hour, struck her. A witness who was behind her upon the path says: "I saw her look up and down the track. The instant the train came—I was to go on the track myself—she came on the track, and it hit her. * * * The first thing I saw was when she stopped at the track, and looked up and down, and attempted to cross the track. She was going the same way that I was. She was ahead of me. There was no fence there. After I saw her stop at the track, and look up and down the track, she started to cross. The train came from Orange, bound for Newark." The witness further testified that he did not hear any bell rung, or any signal of any kind from the train, that night, and that he did not hear the train until it got where the woman was. Then they blew a short, shrill whistle, the moment they struck her. The witness further testified that "it was not daylight; it was a little bit misty." The witness having testified that he was able to see her (the plaintiff's intestate) for a distance of 20 to 30 yards, and noticed that she looked up and down the track before attempting to cross, it is quite clear that it was not so dark but that one could see without difficulty an approaching train; especially as it appears by uncontradicted evidence that the headlight of the train was lighted, and burning brightly. It appeared that about 30 yards away from where the woman was hurt there was a bridge over the railroad, and that the abutment of the bridge would prevent an engineer upon the train from seeing a person approaching the track along this path until the person came quite near the track. It would not, however, prevent a person, just before going upon the track, from seeing the approaching train. There were no buildings in the immediate neighborhood of this path; the land at this point, upon each side of the track, apparently being unoccupied. It seems to me that this undisputed evidence shows that the plaintiff's intestate was guilty of contributory negligence, and that the injury was occasioned solely by such negligence. She was approaching a railroad track by a private path, where trains were in the habit of constantly passing. It was between 7 and 8 o'clock in the evening, after dusk. The train was approaching with a headlight brightly burning, and the plaintiff's intestate was walking towards the train, and her position was such that, if she had stopped before attempting to go upon the track, and looked, she must have seen the approaching train; and, notwithstanding that fact, when she arrived at the edge of the track upon which the train was approaching, and which must have been but a short distance from

her, she came near to or stepped upon the track, and was struck by the locomotive. Thus she proceeded to cross the track in front of this approaching locomotive. The witness who was 20 or 30 yards from her says that she looked up and down before she stepped upon the track; but if she did make the motion as if she looked, it follows as a necessary conclusion that she either really did not look in the direction of this approaching train, because, if she had, she must have seen it, or if she did look, and did see it, it was clearly negligence to cross in front of it. There is no evidence that she was blind, or had defective eyesight; no evidence that anything intervened between her and the approaching train that would prevent her from seeing, or that her attention was distracted so that it could have escaped her attention; and the conclusion is irresistible that if she looked she did see the train. The duskiness of the night could not prevent the plaintiff's intestate from seeing the headlight of this approaching train. To say that under such circumstances a finding of a jury that the plaintiff did look, and could not see the train, is supported by evidence, would be deliberately shutting our eyes to the clear and necessary inference to be drawn from undisputed facts, where there is absolutely no evidence that such inference is not well founded. The only witness produced who saw this accident placed the plaintiff's intestate upon the edge of the track at the time when this train was almost upon her, with an unobstructed view between her and the approaching train, with nothing to prevent her from seeing it, with no necessity for her either to approach so close to the train or to place herself upon the track in front of it as to endanger her life; and yet, with the train, as it must have been, in full view, she deliberately placed herself in such a position that it struck her. The only inference that can be drawn from these facts is that the plaintiff's intestate either did not look and was negligent, or, if she did look, and, notwithstanding the approach of the train, attempted to cross the track in front of it, she took the risk of being injured. We are bound to apply the necessary inferences that arise from facts proved, and it seems to me quite clear that no other inference than that above stated is possible. "The duty of every individual using a public highway at railway crossings to exercise that degree of care and prudence called for by the peculiar circumstances, and proportioned to the danger of injury from a collision with a passing train of cars,—such care and foresight as men of ordinary prudence would use if placed in the same situation,—is well understood and authoritatively settled. This ordinary care involves the vigilant use by the traveler of his senses in approaching the place of danger, and that he should look in every direction from which danger may be apprehended, and at the same time attentively listen for any signals or evidence of an approaching train. If there is any omission of duty or precaution in this respect, and he sustains injury to his person or property, caused wholly or in part by such want of care, he must bear the loss" (Weber v. Railroad Co., 58 N. Y. 455); and a person using a private crossing is required to assume a greater burden of care than would be necessary where the crossing is public. and the duties and

responsibilities of the railroad company correspondingly lessened (Am. & Eng. Enc. Law, 915; O'Connor v. Railroad Co., 135 Mass. 352; Sutton v. Railroad Co., 66 N. Y. 243; Byrne v. Railroad Co., 104 N. Y. 362, 10 N. E. 539; Barry v. Railroad Co., 92 N. Y. 289).

We also think that it was error for the court to charge, at the request of the defendant, "that the jury have the right and may take the liberty of disregarding the witnesses of the defendant, if they consider them interested, even though they be not contradicted or impeached," to which the defendant excepted. This instruction was much too broad. The criterion fixed by the court was as to whether the jury considered a witness interested, not whether a witness was so interested in the result as to affect the weight to be given to his testimony. A jury is never justified in disregarding the testimony of witnesses produced by a party and sworn upon the trial. All of the testimony in the case is to be considered; and while the jury, in determining the credibility to be given to a witness, may consider his interest in the controversy, or in the decision of the question of fact submitted to the jury, to say that a jury has the liberty of disregarding the testimony of a witness if they considered such witness interested, gives to a jury a discretion to refuse to consider evidence which is competent in the case, and which they are bound to consider in arriving at their verdict. That the credibility of a witness is for the jury where the testimony given by such witness is contradicted, or where he is impeached, or so interested in the result that his interest may affect his testimony, is one thing; but to say that the jury are entitled to disregard competent evidence in the case is quite another.

We think, therefore, that the judgment must be reversed, and a new trial ordered, with costs to the appellant to abide the event.

PATTERSON and PARKER, JJ., concur. RUMSEY and WILLIAMS, JJ., concur on last ground stated in opinion.