PREUSCHOFF *v.* B. STROH BREWING CO.[1]

1. WITNESSES—CREDIBILITY.

The jury are not bound to believe a witness whose testimony on direct examination not only differs from that on cross-examination, but is also inconsistent with the circumstances, although there is no other testimony bearing on the same question.

2. NEGLIGENCE—NOTICE—QUESTION FOR JURY.

The presence of a carpenter in a doorway, removing the door, is not notice to a fellow employé that a platform and stairway inside the door have been removed, so as to make him negligent, as a matter of law, in not heeding the warning. GRANT, J., dissenting.

Error to Wayne; Brooke, J. Submitted October 9, 1902. (Docket No. 7.) Decided January 6, 1903.

Case by August C. Preuschoff, administrator of the estate of Conrad H. Huber, deceased, 'against the B. Stroh Brewing Company, for the alleged negligent killing of plaintiff's intestate. From a judgment for plaintiff, defendant brings error. Affirmed.

Defendant's brewery is situated between Elizabeth and Columbia streets, in the city of Detroit. These streets run east and west, Elizabeth street being on the south. Elizabeth street proper extends only to that one of the defendant's buildings which constitutes its cellars and shipping rooms, but is continued east by an alley known as "Elizabeth-Street Alley," upon which this building abuts. The cellars are on the west and the shipping rooms upon the east; the large shipping room being upon the north end of the building, the small one upon the south.

[1] Rehearing denied March 23, 1903.

A driveway extends from the end of Elizabeth street to the north on the west side of this building to the yard upon the north, in which yard are situated defendant's barns and shed. The entrance to the small shipping room from the alley is through a door 2 feet 10 inches in width, swinging in and to the left. The sill is 4 inches higher than the alley pavement. A small platform, 6 inches higher than the sill and 2½ or 3 feet square, is situated inside the door. At the end of this platform is a closed stairway leading into the cellar, and directly in front of the door, while at the right there are steps leading to the floor of the small shipping room, which is 3 to 4 feet higher than the alley pavement. Beer was loaded onto the peddlers' wagons from this floor through an opening next to the door. A stairway leads to the room above directly over the cellar stairway. Beer for city trade was loaded at the small shipping room; that for outside trade from the large shipping room.

Mr. Huber, the deceased, was a driver of one of defendant's city delivery wagons. He received orders from the shipping clerks at the office. When there were no orders to be filled, it was the duty of Mr. Huber to report to the barn. The defendant had arranged with a certain company to put three large cast iron casks into the cellar. These casks were in sections 8 feet in diameter and 30 inches wide, with three sections to each cask. Each cask had two rims. This company had hauled the evening before, and placed near the door in Elizabeth-street alley, one or more of the sections. The other sections and rims were drawn in the morning, and deposited around the door. They obstructed the alley so that no team could pass through.

The deceased and another driver had taken out loads from the small shipping room in the morning before the alley was thus obstructed, in accordance with orders received from one Schrantz, a shipping clerk. Stempel, the other driver, loaded first. The day was stormy, and, after delivering his load, Mr. Huber returned, put his

horse under the shed, went to the office, asked for orders, but there were none just then for him to fill. Meanwhile Mr. Stempel had returned from delivering his first load, drove into the alley for another load, found it obstructed, the door nailed up, the stairs being removed, and then turned around and drove through the driveway to the platform of the large shipping room to obtain his load. On his way he met Mr. Huber. Mr. Stempel testified that Mr. Huber asked him what the matter was, and if he was not going to take the other orders out; that he (Stempel) told Mr. Huber that he could not load there; that they had taken the stairway away "to load casks down." A large truck was standing at the platform, and Stempel asked Huber to help push it away so that he could get his load there. This he did. Mr. Stempel loaded and drove away. From this time until Mr. Huber went to the door of the small shipping room and fell down the stairway no one saw him. Mr. Stempel's testimony as to Mr. Huber's assisting him to remove the large truck is corroborated by another teamster named Baxter.

Meanwhile one Lewis, an employé of the company which had contracted to put in the casks, came, with other employés of said company, to the alley to do the work. The casks and rims, 15 in number, lay in the alley in front of the door. One Burmeister, a carpenter in the employ of the defendant, was there to assist in the work, which was evidently under the direction of Mr. Lewis. While Mr. Burmeister was taking out the platform and the stairs, the door was fastened by one nail driven into the casing. It took from a half to three-quarters of an hour to remove the stairway and platform. After this was done, the nail was taken out, the door swung in, and Mr. Burmeister stood in the doorway with his back to the alley, reaching to the upper hinge with a screwdriver, removing the screws for the purpose of taking down the door. It was necessary to remove the door and also tear down the platform in order to obtain the proper width to admit the sections of the casks. While Mr. Burmeister

was engaged in this work, Mr. Lewis was arranging his tackle overhead for the purpose of lowering the casks. Mr. Burmeister was a large man, 5 ft. 5 in. high; weight, 195 pounds, breadth of shoulders, 20 inches, breadth of hips, 15½ inches. While Mr. Burmeister stood in the position above described, and Mr. Lewis was at work fixing the tackle, Mr. Huber, without warning, approached the door, pushed Mr. Burmeister aside so that he had to grasp the casing to prevent being thrown into the cellar himself, fell into the cellar, and was killed. Plaintiff seeks to recover damages for his death on account of the negligence of the defendant in leaving the doorway unguarded. The circuit judge left the question to the jury, who found a verdict for the plaintiff.

*Brennan, Donnelly & Van De Mark,* for appellant.

*Ira A. Lieghley,* for appellee.

GRANT, J. *(after stating the facts; dissenting).* 1. The court instructed the jury:

"I charge you as a matter of law that you may believe the testimony of any witness or disregard the testimony of any witness."

This instruction was given without any qualification or explanation. It is not the law. Jurors are not at liberty to arbitrarily set aside the testimony of a fair and unimpeached witness. The books are full of cases where courts have directed verdicts where the testimony is uncontradicted, and the witnesses, though in the employ of the parties, are unimpeached. There must be something apparent upon the record to cast discredit upon the testimony of an uncontradicted witness before the jury are justified in disregarding his testimony. *Underhill* v. *Railway Co.,* 81 Mich. 43 (45 N. W. 508); *Fruit Dispatch Co.* v. *Russo,* 125 Mich. 306 (84 N. W. 308), and authorities there cited; *Michigan Pipe Co.* v. *Michigan Fire & Marine Ins. Co.,* 92 Mich. 482 (52 N. W. 1070,

20 L. R. A. 277). The decisions of other courts are to the same effect. *Evans* v. *George*, 80 Ill. 53; *Harding* v. *Brooks*, 5 Pick. 244; *Berzevizy* v. *Railroad Co.*, 19 App. Div. 309 (46 N. Y. Supp. 27).

The facts set forth in the above statement are undenied by a single witness, or by any circumstances in the case. The only ground a jury could have for setting aside the uncontradicted testimony of Stempel is that on cross-examination he testified that he had not talked with the defendant's attorneys about the facts he testified to. When his attention was called upon redirect examination to conversations with defendant's attorneys, he promptly admitted them. On recross-examination he explained that he supposed counsel for the plaintiff was referring to conversations before he was subpœnaed. Plaintiff's counsel on cross-examination also elicited from witness the fact that he at the time of the accident told others that he had so told Huber. The inquiry by Mr. Huber was natural, and Mr. Stempel's reply was equally natural. Whether, under the circumstances, this denial of the witness that he had talked with the defendant's counsel was sufficient to authorize the jury to wholly disregard his testimony, corroborated as it was in other particulars, is not specifically argued by counsel, and I express no opinion upon it. It was at least important for the court to instruct the jury that, before they could utterly disregard his testimony, they must be able to find that this denial was sufficient to destroy confidence in the truthfulness of the witness.

2. I think the plaintiff failed to make out a case of negligence. In addition to the facts already stated, the opening for taking out beer at the right of the door was eight feet long and six to seven feet high. It was partly raised. The only testimony upon this point is that "it was about half to a quarter open; about half, or a little lower." Two gaslights were burning in the cellar, one near the foot of the stairs, the other farther in. A light was also burning in the small shipping room. There was a small window in the transom over the door. Three men

were employed in and around the doorway to put the casks into the cellar. One of these stood in the doorway in the act of removing the door; another was inside on the stairs over the door, arranging the tackle; and the third was just inside the doorway upon the shipping room floor. About two years before, other casks had been lowered into this cellar at the same place and in the same way, the door, stairs, and platform being removed. Mr. Huber was then in the employ of the company.

The defendant's employés acted with commendable care in nailing up the door while removing the stairs. It was then necessary to remove the door. The door could not be obstructed; the space must be left open. A rail outside of the casks would have been no warning or protection, unless built high enough to keep persons out. Ordinarily, no one could enter this door in the usual and proper manner without being seen by some one of the defendant's employés. Was it the legal duty of the defendant to suppose that one of its employés would rudely push another employé, who stood in the doorway, aside, and rush to his death? Burmeister was there for two purposes,—to keep defendant's employés out, and to assist in the work. If he had been placed there for the sole purpose of notifying those who had occasion to go there of the danger, and he stood with his back to the alley, obstructing the doorway so that no one could enter without pushing him aside, would not defendant have performed its duty towards its employés? Would not Mr. Burmeister have been justified in believing that no one would attempt to push him aside and rush into the building? Burmeister's speedy action in grasping hold of the casing alone saved him from going into the cellar with the deceased.

Why Mr. Huber entered does not appear. He was not going after a load. It does not appear that he had occasion to go there for any other purpose. It evidently was not the usual place for employés to stay when not at work. His proper place, when not engaged in hauling beer, was at the barn. His team was at the time in the

shed near the barn. He had no work to perform in the shipping room at this time. Had Mr. Huber entered this doorway in a proper manner, he would not have been injured. He could not enter until Mr. Burmeister was out of his way. Instead of asking him to step aside, he rudely pushed him aside. He had no right to do this. There is no dispute as to the fact upon this point. Both Burmeister and Lewis testified that Huber, without saying a word, deliberately and forcibly pushed Burmeister aside, and their testimony is uncontradicted. I think that the defendant was under no obligation to anticipate such action on the part of its employés, that it had done all that the law requires to protect them, that the surroundings were sufficient to put Mr. Huber upon his guard, that he entered this door in an unjustifiable manner, and that the accident was the result of his own rash conduct. I think the court should have directed a verdict for the defendant.

Judgment should be reversed, and new trial ordered.

MOORE, J. I cannot agree with the conclusion reached by Justice GRANT. In relation to the two important questions discussed by him, the circuit judge charged the jury as follows:

"I need hardly say to you that the defendant in this case had an undoubted right to have them [the vats] put in the building, and, if it was necessary at that time to remove the stairway and the platform and the door, they had a right to do this also. They had clearly a right, in the manufacture of beer, to make such improvements as were necessary or essential to the proper conduct of their business. Under these circumstances, the law unquestionably cast upon them a duty, and I charge you that the fact of taking up the platform and the stairs just inside of the door by the defendant, forming a pit or an opening in the floor, and the fact that the entrance in question over the platform that had been taken out was the usual and ordinary method of entering that portion of the building known as the shipping room, made it the duty of the defendant to properly guard the opening; and, if it was not practicable to guard it with a railing, to use some

other and more efficient method. That is unquestionably the law. They knew at that time that people would be likely to go and enter at that door, and it was their duty, having taken up the platform and the stairway, to use a reasonable degree of care to prevent others from going in and going down to their injury. When I say to prevent them, I do not mean to say that it was essential that they should insure the lives of all who came there, for they were not insurers; but they were bound to use that proper degree of care which an ordinarily prudent man would have exercised under like circumstances. That is the only extent to which the defendant in this case can be held. They cannot be regarded as insurers of Mr. Huber's life, nor of the lives of the other employés; but in the conduct of their business, and with reference to this particular danger, they should use that ordinary degree of care that a reasonable man would have exercised under like circumstances. In other words, if the defendant changed its premises or its appliances with which the deceased worked, or which he used in his ordinary employment, between the time he had last used them, so as to render its premises more dangerous than they were before, it became the duty of the defendant either to warn its employés, or to take reasonable means to protect them from accident.

"Now, gentlemen of the jury, you have heard the testimony in ·this case, and it is for you to determine in this matter whether this is to be regarded as a pure accident, whether the defendant was negligent in failing to properly guard the danger which had been created, or whether the plaintiff's intestate—that is, Conrad Huber himself—was negligent in the way in which he went into the building, as you have heard detailed by the witnesses upon the stand. If it was an accident,—that is, if it was a thing for which nobody was to blame,—then the plaintiff cannot recover in this case. If it was due to the negligence of Mr. Burmeister, he being for the purposes of this case the B. Stroh Brewing Company, and Mr. Huber himself was not negligent, then Mr. Huber could recover, or the plaintiff in this case could recover. But, even though Mr. Burmeister was negligent in the guarding of the doorway, if you find that Mr. Huber did not use such care in the entrance of that building as an ordinarily prudent man would have used under the circumstances, then he cannot recover, even though Mr. Burmeister was negligent. If you find that Mr. Burmeister was not negligent, that he did prop-

erly guard it, then, even though Mr. Huber did use ordinary care and prudence, he could not recover. So that, in order that the plaintiff may recover in this case, you must determine, first, that Mr. Burmeister was negligent, —that is, that he did not use such care in the guarding of that doorway as a reasonably prudent man would,—and you must also find that Mr. Huber, in going in there in the way that he did go in, did use such care as a reasonably prudent man would have used under the circumstances.

"In determining whether Burmeister did use such ordinary care, you must take into consideration all the testimony. You will remember the width of the door and the size of Mr. Burmeister. Understand, he is the master in this case. You will remember how nearly he filled the door up, and whether he had a right to suppose that standing in the door there as he did was sufficient notice to anybody coming there,—he being engaged in taking off the hinges of the door,—was sufficient notice to anybody coming there that something was going on, and whether it was such notice as would have reasonably put anybody of ordinary prudence upon their guard. That is the real point in this case. If he had a right to suppose that, then he was not to blame, and if he had a right to suppose that, and did suppose it, then this plaintiff cannot recover in this case.

"Now, gentlemen, there is another question in this case, and that is the question of notice. Irrespective of what happened just at the moment of the accident, there is the question of the notice to Mr. Huber. There are the surrounding circumstances, the question of the tubing, the vat, portions being piled around there. That is supplemented by the testimony of one Stempel, who swears that upon the morning in question, and very shortly before the accident, he told the deceased, Huber, having driven around there to load, and found he could not load by reason of the obstruction there, that he told Huber that he could not load there, and that was the reason he was going back to the other entrance, and that they were taking the stairway away. I charge you that, if that testimony is true, and Mr. Huber had actual notice of this, that is an end to this case, because a man cannot disregard a warning of that kind and recover. So, if you find that Mr. Stempel did tell him, that ends the case. If Mr. Stempel made that statement to him, and he understood

it, he cannot become careless and negligent and go to his death, and then hold anybody responsible for it. That is another element which you will consider."

I think it cannot be said the jury were bound by the testimony of Mr. Stempel. His testimony upon the cross-examination and direct examination differed. It is also contradicted by circumstances. But a few minutes, and probably but a few seconds, after it is claimed Mr. Huber was warned by Mr. Stempel, Mr. Huber, heedless of the alleged warning, rushed into the danger, and to his death. It is hardly credible that he would have done this if the conversation occurred as stated. In any event, it made it a question for the jury whether the warning was given or not.

Did the presence of Mr. Burmeister in the doorway warn him of the danger, so it can be said as a matter of law Mr. Huber was negligent in not heeding the warning? These two men were both in the employ of the defendant. They were well acquainted with each other. Mr. Burmeister was in the doorway apparently for the purpose of removing the door, and was actually engaged in so doing when the accident occurred. Mr. Huber was in the habit of entering the building through this door. The removal of the door would not make it dangerous for him to enter through the doorway. The day was stormy. He knew Mr. Burmeister well. An act which might properly be regarded as rude if it occurred between strangers would have an entirely different aspect when occurring between friends. I do not think it can be said that the presence of Mr. Burmeister in the doorway, as described by the witnesses, was such an indication to Mr. Huber of danger that it can be said as a matter of law that he was guilty of negligence. The disputed questions were left to the jury under a very careful and able charge.

I think the judgment ought to be affirmed.

HOOKER, C. J., and MONTGOMERY, J., concurred with MOORE, J.