(98 App. Div. 343)

WADDELL v. NEW YORK CENT. & H. R. R. CO.

(Supreme Court, Appellate Division, Fourth Department.  November 15, 1904.)

1. RAILROADS—CROSSING INJURIES—CONTRIBUTORY NEGLIGENCE—FAILURE TO LOOK AND LISTEN.

> A person riding a bicycle on a city street towards a railroad crossing, who for some distance from the track had a practically unobstructed view of the track in both directions, and who failed to look or listen after he passed a point at which he could not have seen trains coming from the west until he reached a point so near to the track on which a train from the west was approaching that he could not avoid a collision with it, was guilty of such contributory negligence as to preclude a recovery for his injuries.

2. SAME.

> Where the situation of moving wagons is such as to obstruct the view and dull the hearing of one approaching a railroad crossing on a bicycle, such person should not proceed across the track without having his bicycle under such control that he can stop, and thus avoid an accident, if necessary.

Appeal from Special Term, Monroe County.

Action by Frank J. Waddell, as administrator of William A. Waddell, deceased, against the New York Central & Hudson River Railroad Company.  From an order denying a motion for a new trial, defendant appeals.  Reversed.

The action was commenced on the 26th day of October, 1903, to recover damages sustained by the next of kin of William A. Waddell, deceased, because of his death, which occurred on the 10th day of October, 1903; alleged to have been caused solely through the negligence of the defendant.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, HISCOCK, and STOVER, JJ.

Albert H. Harris, for appellant.

McInery & Bechtold (George H. Harris, of counsel), for respondent.

McLENNAN, P. J.  The only question which need be considered is, did the plaintiff establish by a fair preponderance of evidence that his intestate was free from contributory negligence, or was the finding of the jury that he was, contrary to or against the weight of the evidence? The question of defendant's negligence was clearly one of fact to be determined by the jury, and no exceptions were taken to the rulings of the learned trial court in the admission or rejection of evidence, or to the charge or refusal to charge, which present reversible error.

York street, which is located in a thickly populated section in the western part of the city of Rochester, N. Y., extends north and south, crossing the railroad of the defendant, consisting of four tracks, at an angle of 101 deg. 40 min.; the obtuse angle being to the northwest. The roadway of the street is 25 feet wide, and is paved with asphalt to within 8½ feet from the northerly track, from which point the entire width of the street—68 feet—is paved with Medina blocks for the entire distance across all the tracks.  Immediately south of defendant's

¶ 1. See Railroads, vol. 41, Cent. Dig. §§ 1043–1070.

tracks, and parallel with them, are two tracks of the Buffalo, Rochester & Pittsburg Railway Company. The most northerly of defendant's tracks is No. 4; the next south is No. 3; the next, No. 2; the most southerly, No. 1; and all are straight for a long distance upon either side of the street. A flagman's shanty stands northwest of the crossing, about 5½ feet north of the north rail of track No. 4, and 27 feet west of the west line of the street, or 62 feet west of the center of the traveled portion. There is nothing south of the shanty upon either side of the street to obstruct the view of the tracks. The evidence is uncontradicted that from a point in the middle of the street 5½ feet from the first or No. 4 track, or 42 feet from track No. 1, the view of track No. 1 to the west is unobstructed for a distance of over 1,600 feet. At a point 10 feet north of track No. 4, or 47 feet from track No. 1, such view extends over 1,100 feet. Standing 15 feet from the north or No. 4 track, or 52 feet from the north rail of track No. 1, that track is in plain view to the west for 394 feet; and, when 57 feet from track No. 1, it is in plain view for a distance of 288 feet. It is thus seen that a traveler upon York street, approaching the crossing from the north, has a view of track No. 1, to the west of the street, which for all practical purposes is absolutely unobstructed by any permanent structures or objects. When he reaches a point 5½ feet north of the first track, on a line with the front of the flagman's shanty, which is 42½ feet from the north rail of track No. 1, all of the tracks upon either side of the street are in plain view for a distance of nearly half a mile, and continue to be for the entire distance between that point and track No. 1.

About 7 o'clock in the morning of the 10th day of October, 1903, plaintiff's intestate, then 25 years of age, bright, active, and in full possession of all his faculties, approached the crossing in question, with which he was familiar, from the north; riding a bicycle, which he was accustomed to use, along the easterly side of the street, going at the rate of from 5 to 6 miles an hour. When he reached track No. 1, the fourth counting from the north, at a point about 3 feet from the easterly line of the street and of the Medina pavement, he was struck by the engine of a passenger train going east on track No. 1—the regular east-bound passenger track—and injured in such manner that death resulted. The evidence tends to show that the train was running at the rate of upwards of 30 miles an hour, and that the bell was not rung or the whistle sounded. A flagman stood at the crossing, facing the south. He had signaled two men who were going north following each other, driving teams drawing wagons upon which were empty hay racks, both of whom passed in safety. While such rigs were upon the westerly side of the crossing, proceeding north, the deceased was proceeding south on the easterly side; the rigs being between him and the approaching train. They were about 22 feet in length over all, and the racks were 4½ feet in height, with seats in front, and boxes over the rear wheels extending a foot higher. Thirty or 40 men employed by the Buffalo, Rochester & Pittsburg Railway Company were standing about the crossing, waiting for a train to take them to their work. As the deceased was going upon the north track, the first team was just leaving it. There were no trains, engines, or cars approaching the crossing or standing upon the tracks in that vicinity, other than the

train which struck the deceased; and there was no noise in the vicinity at the time, other than what was made by the two teams and wagons and the moving train. When the deceased was approaching the crossing, and at a point 40 or 50 feet north of the first track, nearly in front of or opposite a house standing on the west side of the street, he was seen to look towards the west, and then proceed without slackening his speed. It is apparent that from such observation the deceased could not have obtained any information as to whether or not trains were approaching the crossing from the west unless such trains were practically in front of him. At that point the house and flagman's shanty prevented a view of the tracks except for a comparatively short distance from the crossing. The deceased took no other precaution, and made no other attempt to ascertain whether or not a train was approaching until he reached the point of danger. Indeed, the able counsel for the respondent substantially concedes this. He states in his brief:

"To the north of the crossing, near the east curb, and in front of the house shown in Exhibits 2 and 5, was the deceased upon his bicycle. At about this time he was observed to be looking. The flagman signaled the rigs to come across. Evidently relying upon the same signal, the deceased proceeded toward and onto the crossing. What the deceased did from that time on, so far as looking is concerned, does not appear."

We think those facts do not tend to establish freedom from contributory negligence on the part of the deceased. It is urged, however, that the deceased was relieved from again looking to the west, and from attempting to make any further observation, because to do so would have been useless, from the fact that the two rigs referred to would have prevented him from seeing the oncoming train. The evidence wholly fails to support that contention. The deceased, who was 5 feet 10 inches in height, was sitting upon his bicycle in the ordinary way. There were no loads upon the wagons, and there was considerable space between the hind end of the first wagon and the team drawing the second as they proceeded over the crossing. We might almost take judicial notice of the fact that if the deceased, who was at the easterly line of the street, which was 68 feet wide, had looked over the top of the racks which were upon the westerly side of the street, he could have seen at least the smokestack and top of the engine as it approached. It will be remembered that the racks were only 4½ feet high—not higher than was the line of vision of the deceased. The evidence establishes that if the deceased, after he passed a point 5½ feet north of the first track, had looked to the west, he could have seen the train approaching, and could have avoided coming into collision with it. There is nothing to indicate that the deceased listened, nor is any adequate explanation given by the evidence why he should not have heard the rumbling noise of the moving train. It is true, the evidence shows that the two teams and wagons were making considerable noise; but it is merest speculation to say that, notwithstanding, the plaintiff could not have heard the train if he had listened. Many—in fact, most—of the witnesses called testify that they did hear it, and heard it distinctly. Why the deceased did not hear it and heed it is not explained by the evidence. The plaintiff's intestate did not look or listen after he passed a point a considerable distance north of the crossing until he reached

90 N.Y.S.—16

a point so near to the track on which the train was approaching that he could not avoid coming in collision with it. Under the circumstances, we think such failure constituted contributory negligence, and such as to prevent a recovery. McSweeney v. Erie Railroad Co., 93 App. Div. 496, 87 N. Y. Supp. 836. Besides, if the situation of the two moving teams and wagons in question was such that they would obstruct the deceased's view to the west, and prevent him from seeing or hearing an approaching train, that fact was apparent to him; and he ought, therefore, not to have proceeded without having his wheel under such control that he could have stopped, and thus have avoided an accident. He had no right, under the law, because of the presence of such obstructions, to attempt to cross without looking and listening, and without exercising some care after he entered upon the crossing to ascertain whether or not it was safe for him to proceed.

The cases cited by respondent's counsel we think are not authority for the proposition that the facts disclosed by the evidence in this case, when considered most favorably to the plaintiff, tend to establish that the plaintiff's intestate was free from contributory negligence. It is concluded that the plaintiff failed to sustain the burden imposed upon him by law of proving that his intestate was free from contributory negligence. It follows that the order appealed from should be reversed, and a new trial granted, with costs to the appellant to abide the event.

Order reversed and new trial granted, with costs to appellant to abide event. All concur.