FRANKLIN P. TURNIER, Administrator of SOPHIE L. TURNIER, Deceased, Plaintiff, v. THE NEW YORK CENTRAL RAILROAD COMPANY, Defendant.

Supreme Court, Westchester County, January, 1925.

Railroads — crossing accidents — action for death of plaintiff's intestate, killed by defendant's locomotive at highway crossing — plaintiff's intestate guilty of contributory negligence in failing to heed approach of oncoming train 472 feet distant where view was unobstructed — verdict against weight of evidence where defendant exercised reasonable care in operation of trains at crossing — verdict for plaintiff set aside.

In an action for the death of plaintiff's intestate, killed by defendant's locomotive at a highway crossing, defendant's motion to set aside the verdict of a jury in favor of the plaintiff should be granted, where an examination of the evidence discloses that plaintiff's intestate was guilty of contributory negligence, since her view was unobstructed for 472 feet in the direction the train was approaching and had she looked, she could have seen the oncoming train, of whose approach she had ample and timely warning. Moreover, the verdict is against the weight of believable testimony, since it appears that the defendant exercised reasonable care and prudence in the operation of its trains over this particular crossing.

MOTION by defendant to set aside a verdict of the jury in favor of the plaintiff in an action for the death of plaintiff's intestate

who was struck and instantly killed by defendant's locomotive at a highway crossing.

*Thomas J. O'Neill* [*John A. Goodwin* of counsel], for the plaintiff.

*Alex S. Lyman* [*Jacob Aronsa* of counsel], for the defendant.

Morschauser, J.:

The jury rendered a verdict for the plaintiff in this case. A motion was made by the defendant to set aside the verdict.

On July 21, 1921, at about eight o'clock standard time in the early evening of a clear day, a north-bound train of defendant was passing over a private crossing at Valhalla. When the caboose of this train was about five or ten feet north of the crossing, plaintiff's intestate, going in a westerly direction, crossed the north-bound track traveling at a normal gait. When she arrived between the rails of the south-bound track she was struck and instantly killed by the locomotive of a south-bound train. She was a woman of thirty-five years of age, earning about twenty-five dollars per week.

She was an artificial flower maker. She was familiar with the crossing. She was unmarried and was survived by her father, who is over seventy-two years of age, and left no mother or brothers or sisters.

There was no smoke, steam or fog to obstruct her line of vision. There is another highway crossing five hundred and thirty-one feet north of Valhalla crossing. The whistling post for the upper crossing is two thousand and thirty-four feet north of the Valhalla crossing. The Valhalla depot is about seventy-five feet north of the Valhalla crossing. At the Valhalla crossing the distance from the easterly rail of the north-bound track to the westerly rail of the south-bound track is sixteen and eight-tenths feet. The space between the rails of each track from rail to rail is four and seven-tenths feet. Between the tracks the space is seven and four-tenths feet.

I believe the verdict is against the weight of evidence on the issue of defendant's negligence. By the greater weight of believable testimony I think it is established that there was ample and timely warning given to plaintiff's intestate of the oncoming train and that the defendant exercised reasonable care and prudence in the operation of its trains for this crossing.

Whistles need not be sounded for any particular crossing, for a warning given for a nearby crossing, if it can be heard, is sufficient. (*Raymer* v. *Rutland Railroad Co.*, 204 App. Div. 135; *Foley* v. *N. Y. C. & H. R. R. R. Co.*, 197 N. Y. 430.)

Assuming there might be a question on the issue of the defendant's negligence, yet on the question of contributory negligence of

plaintiff's intestate the defendant has fully borne the burden of proving that the plaintiff's intestate was negligent.

When she used the crossing she was bound to exercise ordinary care and prudence under the surrounding circumstances. The care, prudence and caution that should be exercised is that commensurate with the dangers reasonably to be apprehended.

The witness for the plaintiff, Flaherty, testified that he saw the plaintiff's intestate glance or look to the north as she stepped or was about to step upon the north-bound track. This does not prove that she looked toward the path of the south-bound track. She glanced or looked in a northerly direction when she was observing the departing caboose on the north-bound train. He also said that at the time of the making of his signed statement, the day after the accident, his memory was clearer than it was upon this trial which took place more than three years thereafter. His story is somewhat different than that he told when he gave his statement, but he does not repudiate the story told on the day after the accident. In the signed statement he said: " She was looking straight ahead, but I noticed she turned her head and looked north just an instant before being struck." Briefly he says, what he said in his signed statement was true, but now he claims that she only glanced or looked north after the caboose had passed.

Assuming that his story is to be believed, that she glanced or looked immediately after the caboose passed, or that she looked immediately before being struck or both, the plaintiff's intestate was guilty of contributory negligence.

If the caboose obstructed her line of vision when she looked she did not look from a place where looking would have availed her anything. (*Cassidy* v. *Fonda, Johnstown & Gloversville R. R. Co.*, 200 App. Div. 241.)

In *Turck* v. *N. Y. C. & H. R. R. R. Co.* (108 App. Div. 142, 145) the court said: " It was the clear duty of the deceased to watch out for an approaching train as he entered upon the crossing. If the passing freight train obstructed his view so as to render it unsafe, it was his duty to delay his crossing until that train had so far passed as to render his view a safe one. Such an obstruction was manifestly a temporary one, which required but a slight delay on his part to be entirely removed " (citing *Purdy* v. *N. Y. C. & H. R. R. R. Co.*, 87 Hun, 97; *Young* v. *N. Y., L. E. & W. R. R. Co.*, 107 N. Y. 500; *Waddell* v. *N. Y. C. & H. R. R. R. Co.*, 98 App. Div. 343).

When the plaintiff's intestate reached the westerly rail to the north-bound track she could see 472 feet of the south-bound track north of the point at which she stood.

The headlight of the locomotive was burning and even if not burning, or no whistle sounded or bell ringing, still if she had looked and looked intelligently she could and should have seen the oncoming south-bound train.

As was said in *Swart* v. *N. Y. C. & H. R. R. R. Co.* (81 App. Div. 402, 407): " It cannot be that ' look ' simply means that a person with his eyes open shall turn his head in a particular direction. The word as used and understood in the decisions must mean that he ' looked ' intelligently, and in such manner that what his vision disclosed might influence his action or conduct. If the plaintiff in this case looked to the west in that sense, after passing the south end of the hedge, he saw the approaching freight train; saw it plainly and distinctly, because it was in full and plain view. If he did not look in the sense indicated, in law he did not look at all. A blind man may say, ' I looked and did not see,' and it may be said of an idiot that he looked and no impression was made upon his mind; but not so with a person who has good eyes and a sound intellect.

" The question in this case is simple. If when at a point in the highway twenty-five feet from a crossing the plaintiff looked to the west for the purpose of seeing, as in law, he was bound to do, he in fact saw the train with which he came into collision. If he saw it and made no effort to avoid the collision, as concededly he did not, he was guilty of negligence as matter of law. If he did not look in the sense indicated, he was guilty of negligence, and a recovery cannot be had. This court has held (*Fiddler* v. *N. Y. C. & H. R. R. R. Co.*, 64 App. Div. 95) that a statement by a plaintiff that he looked and did not see does not raise a question of fact when it is demonstrated according to the laws of nature and common experience that if he looked he did see."

In *Dolfini* v. *Erie R. R. Co.* (178 N. Y. 1) the court used the following language (at page 4): " If the plaintiff looked at the point stated in his testimony, the train, at the time, must have been two or three hundred feet west of the curve and in plain sight. It is not sufficient that the plaintiff testifies that he looked but did not see. Such a statement is incredible as a matter of law " (citing *Matter of Harriot*, 145 N. Y. 540).

In *Berzevizy* v. *D., L. & W. R. R. Co.* (19 App. Div. 309, 313) the court said: " A person using a private crossing is required to assume a greater burden of care than would be necessary where the crossing is public and the duties and responsibilities of the railroad company correspondingly lessened " (citing 4 Am. & Eng. Ency. of Law, 915; *O'Conner* v. *Boston, etc., R. R. Corp.*, 135 Mass. 352; *Sutton* v. *N. Y. C. & H. R. R. R. Co.*, 66 N. Y. 243; *Byrne* v. *N.*

*Y. C. & H. R. R. R. Co.*, 104 id. 362; *Barry* v. *N. Y. C. & H. R. R. R. Co.*, 92 id. 289).

When the whole case is subjected · to examination, and the testimony analyzed it clearly appears that the plaintiff's intestate was negligent.

Motion to set aside the verdict and for a new trial granted.